PATTON et al. v. FARMERS MUT. FIRE INS. CO. OF KNOX COUNTY. NO. 1.—125 S. W. (2d) 498.

Eastern Section. December 17, 1938.

Petition for Certiorari Denied by Supreme Court, March 4, 1939.

White & Leonard, of Knoxville, for appellant.
Jennings & O'Neil, of Knoxville, for appellees.

AILOR, J. ▉ This cause is improperly styled in this court. James C. Patton and others obtained a judgment in the court below, and Farmers Mutual Fire Insurance Company of Knox County has appealed in error to this court. So it will appear that the same should be styled "Farmers Mutual Fire Insurance Co. v. James C. Patton et al." For convenience the parties will be referred to in this opinion as they appeared in the court below.

James C. Patton and E. E. Patton instituted this suit to recover on a policy of fire insurance issued by defendant on certain personal property and a dwelling house situated near Corryton, a rural community of Knox County, Tennessee. James C. Patton, E. E. Patton and Nora J. Patton were owners as tenants in common of the dwelling in question. Nora J. Patton died on April 22nd, 1936, and plaintiffs inherited her interest in said dwelling, they being the owners of a one-half interest each in same at the time of the fire which destroyed same. James C. Patton was the sole owner of the personal property destroyed by the fire and covered by the policy of insurance sued upon in this suit.

Due notice of the fire and the damages resulting therefrom was given to the defendant, but liability under the policy was denied on the ground that same had been suspended by notice duly given. On the trial of the cause defendant made a motion for a directed

verdict on the ground that the notice of suspension effectively terminated liability under the policy, and that there was nothing to submit to the jury. The motion was denied and the jury returned a verdict in favor of plaintiffs. It is not necessary to notice the grounds relied upon in motion for directed verdict at this time as the same were included in motion for new trial and are made the basis of assignment of error.

Motion for new trial was made and overruled and an appeal in error prayed to this court, but the appeal was not perfected. However, on August 6th, 1938, within one year from the date of the overruling of motion for new trial, and the record was filed in this court with petition for writ of error. Motion is made for dismissal of the petition on the ground that it does not meet the requirements of a petition for writ of error. It is true that the petition is not designated as a petition for writ of error, and neither is a writ specifically prayed for in the prayer of the writ. However, when taken as a whole we think it sufficiently appears that it is a petition for writ of error and should be treated as such by this court. In the body of the petition it is described as petition for writ of error. The motion to dismiss is denied.

Four errors have been assigned for reversal of the judgment of the lower court. However, only two questions are raised by the errors assigned. It is first insisted that benefits under the policy were suspended by virtue of notice to that effect given prior to the date of the fire. The notice in question was dated April 7th, 1937, and was received by one of the plaintiffs on April 10th, 1937. The fire occurred on April 12th, 1937. As we understand it defendant insists that benefits under the insurance policy ceased from and after the mailing of the letter in question. It is sufficient to say in connection with the contents of the letter that it advised plaintiffs that the insurance had been suspended until the house roof had been repaired.

No attempt was made to repair the roof between the receipt of the notice and the fire. But it might be observed that the fire originated some distance away from that portion of the roof not acceptable to the insurance company and that the condition of the roof which was objected to by the inspector and which prompted the letter had no connection with the fire. The field agent had visited the place on April 2nd, 1937, but had not expressed any intention at that time of recommending a suspension of the insurance on account of the condition of the roof. However, the letter notifying of the suspension was received by E. E. Patton on Saturday, April 10th, and the fire occurred on the following Monday.

As we understand it plaintiffs insist that they would have been entitled to a reasonable time after notice before defendant could have cancelled the benefits under the policy in question. They

had taken the policy in question in 1918 and had carried it from that time to the date of the fire. At the time the policy was written the residence was covered wih wood shingles. But some few years before the fire most of it had been recovered with metal. J. C. Patton says that a representative of defendant company came to his home on April 6th or 7th, 1937, and looked around. But that he gave no intimation that he proposed to recommend suspension of the insurance on account of the condition of the roof. The portion of the roof complained of was in good condition and did not leak. It was in the same condition it had been since the policy was taken in 1918 except for wear resulting from the passing of time. But defendant insists that it had the right to suspend rights under the policy at any time, and that it exercised this right. This right is claimed under Sec. 62 of the By-Laws of the company, which read as follows:

"The Company through its Executive Committee may reduce, cancel or suspend the insurance on any property when the best interest of the Company demand it, and no part of the entrance fee shall be returned when so cancelled or suspended. Thereafter such persons holding certificate or policy shall not be responsible to said Company except for liabilities arising previous to said cancellation; nor such member receive any benefit of this Company after cancellation of such insurance." The Executive Committee took no action on the report of the agent to suspend. Mr. Jones, President of the Company, says that he called one of the members of the Executive Committee about the matter. But it is apparent that the Executive Committee as such took no action on the matter. Minutes of the actions of the Executive Committee are kept, and these minutes fail to disclose that this matter was ever before the Committee prior to the fire. So that the attempt to suspend was the action of the President, who wrote and signed the letter notifying J. C. and E. E. Patton that the insurance policy had already been suspended.

We think the attempted suspension of the insurance was without effect. Assuming that the Executive Committee had the right to summarily suspend the operation of benefits under a policy, it could only do so as a Committee. The action in this case was nothing more than the action of the President in any event. It is true that Mr. Jones says he called Mr. Mounger, a member of the Committee. But he does not state when he called him, does not show what took place between them, and does not make out an action by the Executive Committee for the suspension of the insurance. It is not satisfactory to the Court, and we presume it was not satisfactory to the jury. However, we think there is another reason why the attempted suspension was insufficient to bar a recovery. The insurance policy provides that the Company may

668

cancel or suspend the policy, but it makes no reference to the method of suspension or the giving of notice of same. Nothing is said about the time of suspension after receipt of notice.

█ Protection from loss is the object behind all applications for insurance. It would be unfair to permit a Company such as defendant to enter into contractual relations with applicants to protect them against loss by fire in return for the payment of certain premiums, and then permit them to summarily terminate the protection without giving the insured a reasonable time within which to obtain other insurance or without giving the insured a reasonable time to remédy objectionable conditions such as is claimed existed in this case. An insurance company will not be permitted to act arbitrarily in terminating its contracts and then set up its actions as an impassable barrier to a recovery. By giving full effect to the insistence of defendant in this case it could terminate its contracts on any grounds considered sufficient by its inspector and in an arbitrary manner. The complaint in this case is that the house was covered with wooden shingles and the agent considered the conditions unsatisfactory. However, it appears that other property in the same community was covered with wood shingles, and that the identical house had been in the same condition, allowing for the passing of time and its effects, for approximately twenty years. Under these circumstances we are of opinion that plaintiffs were entitled to a reasonable time after receipt of the notice within which to procure other insurance or make repairs necessary to meet the objections raised, assuming that the objections were in conformity with the established policy of the Company. As to what would have been a reasonable time was a question for the jury to pass upon, and they have found this issue against defendant.

█ It results that there was ample evidence to support the verdict of the jury, and that the motion for a directed verdict was properly refused by the trial judge. All errors assigned in this connection will be overruled.

It is next insisted that J. C. Patton was not entitled to a recovery for the value of the personal property for the reason that ownership of same was misstated in the application for the policy, and that E. E. and J. C. Patton were not entitled to a recovery for the value of the residence, for the reason that there had been a change in the ownership of the property since the issuance of the policy. This insistence is based upon the fact that the application for insurance was a joint application by E. E. Patton, J. C. Patton, and Nora J. Patton, the proof showing that the personal property was owned by J. C. Patton, and that while Nora J. Patton had an interest in the real estate at the time of the issuance of the policy she had since died, leaving E. E. Patton and J. C. Patton the

owners of same by inheritance from said Nora J. Patton of her one-third undivided interest.

It appears that E. E. Patton and J. C. Patton and Nora J. Patton were brothers and sister. The property in question was the residence of the parents of plaintiffs. Upon the death of the parents of plaintiffs, J. C. Patton and Nora J. Patton, the latter being an unmarried woman, continued to live at the old home place. At the time of the death of the parents, E. E. Patton had disclaimed any interest in the personal property owned by his parents in favor of his brother. When the policy in question was applied for and issued no attempt was made to specify in particular the respective interests of the parties in the property insured. This matter does not appear to have occurred to any of the parties. After the death of Nora J. Patton on April 22nd, 1936, J. C. Patton continued to live at the old home, and it appears that it did not occur to any of the parties that this necessitated any change in the status of the insurance. There was no reason for assuming that it would work any change in the insurability of the property.

█ It is now insisted that J. C. Patton cannot recover the insurance value of the personal property for the reason that there was a misrepresentation as to the title to same in the application for the policy. A reading of the application fails to disclose that there was any representation as to the particular interest that either of the parties had in any of the property and we think the rule sought to be applied has no application. The defendant knew that it was entering into a contract of insurance with J. C. Patton, E. E. Patton and Nora J. Patton. It might have been inferred that they had an equal interest in the property, but there is nothing in the contract to indicate that such was the case. And the fact that they might have had an unequal interest in the property would not have been sufficient to defeat their claims. We find no misrepresentation as to the ownership of the personal property, and think there is no valid reason why the claim should not be paid. And we think the same is true with respect to the real estate.

█ We think the fact that Nora J. Patton died resulting in J. C. Patton and E. E. Patton each owning a one-half undivided interest in the house instead of a one-third undivided interest constitutes no defense to their claim in this case. It was not such change of ownership of the property as provided for which would operate as a bar to recovery of the value of the insurance. At any rate it is provided by statute that a subsequent purchaser or a junior lien holder shall be entitled to the benefits of the insurance in case of damage by fire to the same extent as the original insured so far as his interests in the property may extend. And under the rule that the provisions of insurance policies will be liberally construed in favor of the insured, that is the accomplishment of the object of the contract of insurance, we think the death of a

tenant in common not such a change in ownership of the property as would defeat the claim of two or three tenants in common. See Tennessee Code 1932, sec. 6248.

The change in ownership was involuntary, and substituted no new parties to the contract of insurance. It operated to vest E. E. and J. C. Patton with a one-half undivided interest in the property instead of a one-third interest each in same. We fail to see how it could have adversely affected the interests of the insurance company in any event. We, therefore, conclude that there was no error in the judgment of the lower court and same is affirmed.

Portrum and McAmis, JJ., concur.